*Lamberton, Alricks, and Alleman, for plaintiff.*

*Kunkel, for defendant.*

---

*Court of Common Pleas, Dauphin County, May 1st*, 1868.

SHICK *v.* THE PENNSYLVANIA RAILROAD COMPANY.

The general railroad act of 1849, and the supplements thereto of April 27th, 1855, and April 9th, 1856, have no application to the Pennsylvania Railroad Company, incorporated in 1846, or to any other pre-existing railroad companies, and although the legislature have the power to modify the method by which damages are assessed for lands taken by such companies, the acts referred to are not an exercise of it.

BY THE COURT.—The original act incorporating the Pennsylvania Railroad Company provided for the selection of twenty men by the sheriff of the proper county, and the appointment of twelve of the number to assess damages sustained by the owners of property on account of the interference therewith by the construction of the railroad (see P. L. 1846, section 12, p. 321). In 1848 the law was changed; the number of viewers reduced to five, to be appointed by the court from a neighboring county, all of whom were required to view (see act of 1848, P. L. p. 274, section 4). A further modification took place in 1850, which enabled a majority to view and report (see P. L. p. 583, section 1). So the law stands at present. No power is reserved in the various laws incorporating this company, by which the legislature is authorized to modify or change the charter, and as the corporation was created prior to the adoption of the late amendments to the Constitution of the State, it is probable that the legislature has no general control over it without the consent of the corporators. In 1849 a general act was passed for the creation of railroad companies, providing, *inter alia*, for the assessment of damages by seven viewers, to be appointed by the court, "discreet

freeholders of the county," at least five of whom must view, and assess the damages. In this law the legislature took care to reserve the right to modify, change, or revoke the charter.

On the 27th day of April, 1855, an act was passed giving the right of appeal from the report of viewers under the act of 1849, where either party considered themselves aggrieved by the assessment of damages (see P. L. p. 365). This statute most clearly applied to no other assessments than those made under the act of 1849, but as it was doubtful whether it embraced cases then pending, a supplement was passed to the act of 1849, explanatory of the former law, and making many other provisions connected with the proceedings, both in regard to the land to be given and method of conducting the appeal. Every provision of this statute shows that it was only intended to apply to cases under the act of 1849, to which it was supplementary. It is shown by its title and every section and provision of the law. It is repeatedly recited to be a supplement, as stated in the title, and one provision in the third section is entirely inconsistent with the charter laws of the Pennsylvania Railroad Company. This section gives the right of appeal from the report of the viewers or any *four* of them, whereas the act of 1850, already cited, enables three viewers to assess the damages done by the railroad company. There is nothing indicating an intention to change that law. Only five viewers were required under the charter of this company, whereas seven must be appointed under the act of 1849, and at least five view the premises.

This act was designed to apply to companies created after its passage, and intended as a model on which all should be formed. Neither the original law nor any of its supplements have the slightest application to pre-existing companies. We can see nothing in the act indicating an intention to modify or change the charter of the Pennsylvania Railroad Company. It is contended by the defendant's counsel, that it transcends the power of the legislature to make any alteration therein without the consent of the corporation. As we understand the Constitution, this charter can neither be revoked nor essentially changed by the legislature, but we do not consider the doctrine as to the inviolability of charters applicable to an assessment of damages. We hold that an appeal could be given to the party whose property is injured, as thereby a great constitutional right—the trial by jury—is secured. The question here does not involve the power of the legislature, but whether it has or has not been exercised, and we are clearly of the opinion that neither the act of 1855 nor that of 1856 have any relation to this or any other company, except those created under the act of 1849. Supplementary acts should be construed as relating to the law of which they form a part, and to that alone, unless otherwise expressed.

[In re Shick's Bill of Costs.]

None of the decisions cited by the plaintiff's counsel on the argument, have the slightest application to this case. Where an appeal is given, it is the only remedy to correct errors not apparent on the face of the proceedings (9 Wright, 339). But where no appeal is given, the party must seek redress by exceptions or endeavor to prevent confirmation by the court. The third section of the act of the 16th of May, 1857, relative to the sale of the public works, relied on to show that the Pennsylvania Railroad came within the act of 1849, has no bearing or application whatever. It merely authorizes the governor to create a new corporation under that law if individuals should buy who were not then incorporated. The appeal taken in this case is unauthorized, cannot be sustained, and must be quashed.

*Lamberton, Alricks, and Alleman, for plaintiff.*

*Kunkel, for defendant.*